FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

ERIN G,[1]

               Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

               Defendant.

No. 4:19-cv-05127-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 16, 18

---

      Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 18. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the
Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that 1) the claimant is
capable of performing other work; and 2) such work "exists in significant numbers
in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.
Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

On September 14, 2015 Plaintiff applied both for Title II disability insurance
benefits and Title XVI supplemental security income benefits alleging a disability
onset date of May 13, 2015. Tr. 170, 353-61. The applications were denied
initially and on reconsideration. Tr. 231-39, 242-54. Plaintiff appeared before an
administrative law judge (ALJ) on April 16, 2018. Tr. 105-50. On June 14, 2018,
the ALJ denied Plaintiff's claims. Tr. 83-104.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2017, has not engaged in substantial gainful activity since May 13, 2015. Tr. 89. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the right midfoot; chondromalacia and internal derangement of the left knee; degenerative disc disease of the cervical spine; type II diabetes mellitus; seronegative inflammatory arthritis; thoracic outlet syndrome; migraines; and obesity. Tr. 89.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 89. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently, stand or walk for about six hours per eight-hour workday, and sit for about six hours per eight-hour workday, with normal breaks. [Plaintiff] would need a sit/stand option, defined as changing from a standing position to a sitting position every 30 minutes for up to five minutes while remaining at the workstation; this would be at [Plaintiff's] discretion. [Plaintiff] can never use foot controls with the right lower extremity. [Plaintiff] can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. [Plaintiff] needs the use [sic] a cane for uneven terrain or prolonged ambulation. [Plaintiff] can occasionally stoop, rarely crouch, and never kneel or crawl; rarely is defined as no more than 15 percent of the time. [Plaintiff] is limited to only occasional overhead reaching and frequent handling, fingering, and feeling. [Plaintiff] must avoid all exposure to bright sunshine and flashing lights; computer monitors are tolerable.

Tr. 90.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 96. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, production assembler, mail clerk, and garment sorter. Tr. 97. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from May 13, 2015 though the date of the decision. Tr. 98.

On April 9, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly incorporated the opined limitations into the RFC;

2. Whether the ALJ conducted a proper step-three analysis; and

3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 10.

# DISCUSSION

## A. RFC

Plaintiff challenges the ALJ's determination of the RFC, specifically the ALJ's failure to incorporate additional limitations regarding her need for a cane. ECF No. 16 at 17-19. Plaintiff claims she is restricted by the use of her cane for any periods spent standing or walking, not merely "prolonged ambulation" or walking on "uneven terrain" as found by the ALJ. ECF No. 16 at 17. Plaintiff asserts that as a result of the ALJ's error, the RFC assessment is not supported by substantial evidence. In support of the argument, Plaintiff claims the ALJ did not give proper consideration to the opinions of consultative examiner William Drenguis, M.D., treating physician Marven Cabling, M.D., and physical therapist Mark Johnson, as well as Plaintiff's own testimony. ECF No. 16 at 17-19. The alleged failure to incorporate the alleged limitation into the RFC was significant because according to the vocational expert, if Plaintiff needed the cane while standing, she would be precluded from performing the jobs identified. Tr. 148-49.

ORDER - 9

### 1. Step Four Legal Standard

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "An RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).

### 2. Medical Opinions Describing Plaintiff's Cane Use

The ALJ committed reversible error by failing to incorporate into the RFC or provide explanation for rejecting Plaintiff's treating and examining providers' opinions regarding Plaintiff's use of a cane for pain relief and balance while standing.

### i.    Dr. Drenguis

On January 5, 2016, Dr. Drenguis performed a consultative examination. On physical examination, Plaintiff demonstrated the inability to rise from her seat without use of her cane and the arm of the chair. Tr. 515. Plaintiff used the cane when walking 20 feet from the waiting room to the exam room, and had an antalgic gait favoring her right leg. Tr. 514-15. Dr. Drenguis noted Plaintiff's tandem walking without her cane was "poor," but improved with use of the cane. Tr. 516. Dr. Drenguis indicated Plaintiff uses the prescribed cane for "changes of position," and "when walking further than across a room." Tr. 516. He further stated Plaintiff uses the cane for "pain relief from her right foot" and "with the cane" describes being able to stand for about a half hour. Tr. 514. Dr. Drenguis opined that Plaintiff "is using a single-footed cane. It is needed for her right foot arthritis and poor balance. It is needed on long distances and all terrain." Tr. 518. He also found that Plaintiff's lifting and carrying capacity and environmental activities were limited by her need for a cane. *Id*. The ALJ gave Dr. Drenguis' opinions "partial weight" because additional evidence indicated greater limitations than identified by Dr. Drenguis. Tr. 95.

Here, the ALJ did not discuss Dr. Drenguis' opinion that Plaintiff needs a cane for her right foot arthritis and poor balance. Further, the ALJ did not cite any evidence or explain why he did not incorporate Dr. Drenguis' opinion that Plaintiff

needs her cane for pain relief and for balance, as reflected by Plaintiff's use of the cane during changes of position and while standing. Although consideration was given for use of a cane in the RFC, the RFC did not take into consideration the necessity of the sit/stand option with the use of a cane or while performing any exertional activities other than prolonged ambulation and ambulation on uneven terrain. By implicitly rejecting Dr. Drenguis' opinion regarding Plaintiff's use of a cane without providing any reason for doing so, the ALJ erred.

### ii.    Dr. Cabling

On November 17, 2017, Plaintiff's treating physician, Dr. Cabling, opined that Plaintiff could stand for 30 to 45 minutes, Tr. 1062, but "must" use a cane or other assistive device "[w]hile engaging in occasional standing/walking." Tr. 1063. Dr. Cabling's treatment notes also indicated "weight bearing increases the pains. She has to use the cane." Tr. 521. The ALJ acknowledged Dr. Cabling's opinion that Plaintiff needed a cane for standing. Tr. 96. The ALJ gave "some weight" to Dr. Cabling's opinion citing consistency with his treatment notes, the findings of Dr. Drenguis, and the treatment notes of other providers, but rejected Dr. Cabling's other opinions pertaining to concentration and absenteeism. Tr. 96. Although the ALJ summarized Dr. Cabling's opinion regarding the need to use a cane for standing, the ALJ neither rejected nor incorporated a restriction into the RFC based on Plaintiff's need to use the case while standing. This was error.

*Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject 'significant probative evidence' without explanation") (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)); *Salvadore v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (implicit rejection of treating physician's opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons").

### iii. Mr. Johnson

In addition, Plaintiff's physical therapist, Mr. Johnson, conducted a Functional Capacity Evaluation in June 2016. Tr. 624-31. Mr. Johnson opined Plaintiff had the "ability to tolerate prolonged standing up to 30 minutes." Tr. 625. Relevantly, during the test for standing, Mr. Johnson's examination findings indicate: "[t]he client remained standing for a total duration of 30 minutes, *she occasionally leaned against objects* due to reports of [bilateral] knee and [right] foot pain." Tr. 627 (emphasis added). Mr. Johnson also found that Plaintiff: "demonstrates significant balance impairments on both compliant and non-compliance surfaces," she "is dependent on her [single point cane] for balance," Tr. 631, and has "impaired static balance," Tr. 625. Several tests were deferred due to concerns for Plaintiff's safety "due to her balance impairments without the use of an assistive device" thus Mr. Johnson found Plaintiff unable to safely participate in waist-to-floor and waist-to-crown lifting, front carry, ladder climbing, and crawling due to imbalance and pain. Tr. 624. During the forward

bending-standing test, Plaintiff reported being unable to continue to due to pain, impaired balance, and fear of falling. Tr. 627. He noted Plaintiff had a significantly limited tolerance for crouching, kneeling, or half-kneeling positions, and work tasks involving a forward flexed trunk position. Tr. 625. Regarding ambulation, Mr. Johnson noted Plaintiff used her cane "at all times for ambulation," Tr. 629, and found that Plaintiff had a "significantly impaired tolerance for prolonged ambulation due to antalgic gait and balance impairments." Tr. 625. During the "6 Min Walk Test," Mr. Johnson noted Plaintiff completed the test with the use of her cane, took two rest breaks, was limited by reports of pain during ambulation, and demonstrated antalgic gait patterns with decreased stance time on the right, decreased step length with left, and a slow cadence. Tr. 627. The ALJ gave Mr. Johnson's opinions "little weight" "because most of them do not provide specific work-related limitations, such as how much weight the claimant could lift and carry or how often he[sic] could perform postural or manipulative tasks during an eight-hour workday." Tr. 95-96. However, the ALJ gave the opinion that Plaintiff could tolerate "prolonged standing for 30 minutes" "greater weight" due to its consistency with the Plaintiff's subjective complaints and the opinion of Dr. Cabling. Tr. 96. The ALJ's decision does not reflect any consideration of Mr. Johnson's finding that during the standing test Plaintiff could not stand for 30 minutes without occasionally leaning on objects for support.

ORDER - 14

Moreover, Mr. Johnson's examination findings that Plaintiff cannot stand for 30 minutes unassisted, requires a cane for significant balance impairment, and uses a cane at all times for ambulation, do suggest specific work-related limitations, thus the ALJ's sole reason according little weight to Mr. Johnson's opinion is not germane to these observations. Although the ALJ is not required to discuss every piece of record evidence, the ALJ may not ignore relevant examination findings and must examine the opinion evidence under the broader context of Plaintiff's impairments. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (concluding that the ALJ was required to examine the evidence under the "broader context" of the claimant's impairments and was not permitted to "cherry-pick" among findings in the record to support a conclusion). The ALJ did not properly reject or include in the RFC the limitations assessed by Mr. Johnson pertaining to Plaintiff's need for a cane and ability to stand unassisted.

### 3. *Substantial Evidence and Harmless Error*

The overall record also contains evidence from Plaintiff's treating providers consistent with the medical opinion evidence. *See* Tr. 14 (June 19, 2018 progress note indicating Plaintiff has been using a cane for ambulation and balance); Tr. 22 (July 24, 2018 noting use of cane for ambulation and balance); Tr. 29 (August 27, 2018 same); Tr. 37 (September 27, 2018 same); Tr. 45 (November 14, 2018 same); Tr. 521 (September 4, 2015 progress note stating "she has to use the cane"); Tr.

634 (October 25, 2017 physical examination noting "[r]equires a cane for ambulation"); Tr. 644 (February 7, 2018 physical therapy treatment plan recommending balance training); Tr. 661 (Tr. 957 (December 29, 2016 review of neurological systems positive for loss of balance).  The medical opinion evidence and treatment record lend support to Plaintiff's allegations that she needs the cane to stand and walk at all times to relieve pain and for balance, unless she has handrails or furniture for support.  Tr. 126-27.  Plaintiff testified that when she's standing it's "the worst . . . because . . . I can't put any pressure on this right foot to stand.  So I'm holding all of my weight on my left side, along with my cane."  Tr. 121.  In concluding Plaintiff's symptom claims were not "entirely consistent with the medical evidence," the ALJ did not cite any contrary medical evidence or explain the reason for finding Plaintiff required a cane to assist only for uneven terrain and prolonged ambulation.  Tr. 92-96.

In light of the ALJ's failure to properly consider the medical evidence in determining Plaintiff's RFC, the RFC is not supported by substantial evidence and remand is warranted.

Defendant contends Plaintiff has not demonstrated harmful error because the vocational expert testified that the particular jobs identified could be performed as light or sedentary work and could be performed by alternating between sitting and standing, and therefore "needing a cane for all ambulation" would not impact jobs

that "could be performed sitting down."  ECF No. 18 at 5.  An error is not harmless

unless the reviewing court "can confidently conclude that no reasonable ALJ,

when fully crediting the [evidence], could have reached a different disability

determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th

Cir. 2006).  Although a sedentary job is defined as one which involves sitting, a

certain amount of walking or standing, for up to two hours total in an 8-hour day,

is often necessary.  *See* 20 C.F.R. § 416.967(a) (defining sedentary work as one

that involves sitting and only "occasionally" walking and standing); SSR 83-10,

1983 WL 31251, at *5 (defining "occasionally" as occurring from very little up to

one-third of the time and noting that for sedentary work periods of standing or

walking should generally total no more than about 2 hours of an 8-hour workday).

Moreover, SSR 96-9p provides:

> The adjudicator must always consider the particular facts of a case.  For
> example, if a medically required hand-held assistive device is needed only
> for prolonged ambulation, walking on uneven terrain, or ascending or
> descending slopes, the unskilled sedentary occupational base will not
> ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and
> carrying of light objects such as ledgers and files and a maximum lifting
> capacity for only 10 pounds, an individual who uses a medically required
> hand-held assistive device in one hand may still have the ability to perform
> the minimal lifting and carrying requirements of many sedentary unskilled
> occupations with the other hand.  For example, an individual who must use a
> hand-held assistive device to aid in walking or standing because of an
> impairment that affects one lower extremity (e.g., an unstable knee), or to
> reduce pain when walking, who is limited to sedentary work because of the
> impairment affecting the lower extremity, and who has no other functional

limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded. In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7. Plaintiff's counsel asked the vocational expert whether a person could perform the jobs identified by the ALJ if the individual would need the assistive device "available to them at all times . . . for any time that they were standing." Tr. 148. The vocational expert testified such limitations would eliminate the jobs identified because the use of the cane would render them a one-handed person and affect productivity. *Id*. Defendant acknowledges this testimony but claims Plaintiff "did not have that degree of limitation." ECF No. 18 at 6. Accordingly, the Court cannot conclude that the ALJ's error in failing to properly assess Plaintiff's limitations associated with her need for a cane and include all limitations in the RFC assessment was harmless.

## B. Step Three

Plaintiff contends the ALJ erred by finding that she did not met Listing 1.02A at step three. ECF No. 16 at 11-17.

### 1. Step Three Legal Standard

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.* If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will

be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.* However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

### 2. Listing 1.02A

Listing 1.02A is "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints" and "[i]nvolvement of one major peripheral weight-bearing

joint … resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P,

App. 1, 1.02A. Listing 1.00B2b defines the ability to ambulate effectively as:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> . . .
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, Subpt. P., app. 1, § 1.00B2b.

Here, the ALJ determined that Plaintiff's degenerative joint disease of the

right midfoot, chondromalacia, and internal derangement of the left knee were

severe impairments. Tr. 89. The ALJ's RFC concluded Plaintiff can stand or walk

for about six hours per eight-hour workday and can occasionally climb ramps and

stairs but needs the use of a cane for uneven terrain or prolonged ambulation. Tr.

90.  The ALJ determined that the medical evidence does not show Plaintiff meets the fourth requirement of the Listing, inability to effectively ambulate.  Tr. 90.

Plaintiff contends the ALJ failed to adequately explain the conclusion that her impairments do not cause an inability to ambulate effectively at step three and that the record shows she cannot ambulate effectively.  ECF No. 16 at 15-17.  Plaintiff cites evidence that she requires the use of a cane in her left hand and refers to her pre-hearing brief provided to the ALJ, suggesting rheumatoid arthritis in her right hand limits her functioning of her right upper extremity, thus the combination of her conditions effectively limits the functioning of both upper extremities.  ECF No. 16 at 16 (quoting Tr. 466).  In response, Defendant contends Plaintiff cannot establish error because the record does not show she needed a hand-held assistive device limiting "the functioning of both arms," or alternatively, the use of a cane and an amputation of the other hand.  ECF No. 18 at 4.

First, Plaintiff has failed to show she meets the aspect of the Listing's "general[]" definition of "ineffective ambulation," requiring "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," i.e., using "a walker, two crutches or two canes."  *See* Listings §§ 1.00B2b1, 1.00B2b2, 1.00J.  As explained further in Listing 1.00J, an individual using "a hand-held assistive device(s) that limits the functioning of both upper extremities" cannot—

while in the act of ambulating—use her extremities for other kinds of work-related activities, such "as lifting, carrying, pushing, and pulling." *See* Listing § 1.00B2b1, referencing Listing § 1.00J4 ("The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling").  The Court further finds no merit to Plaintiff's contention that due to her arthritis in her right hand, she is unable to ambulate effectively.  As noted by the ALJ, physical examination findings concerning Plaintiff's hands were largely normal and nerve conduction studies were also normal.  Tr. 94.  Having ruled out carpal tunnel syndrome, her treating source diagnosed thoracic outlet syndrome at the level of the pectoralis minor and referred her for physical therapy.  Tr. 94.  The ALJ determined Plaintiff could frequently handle, finger, and feel, could occasionally lift up to 20 pounds, and frequently lift or carry 10 pounds.  Tr. 90.  These findings establish Plaintiff does not have a loss of major function of her right hand of such severity rendering Plaintiff's impairment medically equivalent to the Listing.

Second, other limitations separate and apart from needing to use a two-handed assistive device, can meet or equal the definition of ineffective

ambulation.[3]  The Court notes the ALJ's sparse analysis of the Listing issue, where

the ALJ's discussion of the reason why Plaintiff does not meet the Listing was a

_____

[3] Defendant suggests Plaintiff is required to use a two-handed assistive device, or

have an amputation, to meet the inability to ambulate under the Listing.  ECF No.

18 at 4.  The plain text of the Listing describes other limitations separate and apart

from two-handed assistive devices, accordingly, the Court rejects the Defendant's

narrow view of the requirements to meet the Listing.  *Cargill v. Berryhill*, 762 Fed.

App'x 407, 409 (9th Cir. 2019) ("use of a one cane could not independently

disqualify him from meeting a listing."); *Dobson v. Astrue*, 267 F. App'x 610, (9th

Cir. 2008) (although "the use of a two-handed assistive device is independently

sufficient to establish ineffective ambulation, ineffective ambulation may be also

established if the claimant otherwise meets the definition and examples set forth in

the Listing.") (citing explanations in the Federal Register stating that individuals

with extreme inability to ambulate do not necessarily use two, one or any assistive

devices); Revised Medical Criteria for Determination of Disability,

Musculoskeletal System and Related Criteria, 66 Fed.Reg. 58,010, 58, 013 (Nov.

19, 2001) ("[W]e do not consider required use of one cane or crutch to

automatically exclude all gainful activity.  However, if someone who uses one

ORDER - 24

one sentence reference to the language in the Listing without analysis or citation to evidence. Given that the ALJ has been directed to reevaluate the medical opinion evidence, particularly as it relates to Plaintiff's ambulation and use of a cane, the Court directs the ALJ to reconsider the Step Three finding. On remand, the ALJ is directed to adequately address whether Plaintiff's impairments meet or medically equal Listing 1.02.

**C. Step Five**

Finally, Plaintiff contends the ALJ's step five findings were improper because the assessed RFC and the resulting hypothetical posed to the vocational expert by the ALJ, failed to account for Plaintiff's limitations. Upon remand, the ALJ should reassess the RFC and perform the remaining steps of the sequential analysis anew.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits, or alternatively, further proceedings. ECF No. 16 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232

_____

cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.").

(citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court

reverses an ALJ's decision for error, the Court "ordinarily must remand to the

agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir.

2017); *Benecke*, 379 F.3d at 595 ("[T]he proper course, except in rare

circumstances, is to remand to the agency for additional investigation or

explanation"); *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir.

2014).  However, in a number of Social Security cases, the Ninth Circuit has

"stated or implied that it would be an abuse of discretion for a district court not to

remand for an award of benefits" when three conditions are met.  *Garrison*, 759

F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record

has been fully developed and further administrative proceedings would serve no

useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

improperly discredited evidence were credited as true, the ALJ would be required

to find the claimant disabled on remand, the Court will remand for an award of

benefits.  *Revels*, 874 F.3d at 668.  Even where the three prongs have been

satisfied, the Court will not remand for immediate payment of benefits if "the

record as a whole creates serious doubt that a claimant is, in fact, disabled."

*Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary because the Commissioner is in a better position to reevaluate all of the medical evidence to more adequately address Plaintiff's limitations. Remand for further consideration of the treating and examining physicians' and therapist's opinions is necessary to provide the ALJ an opportunity for a fuller explanation of the findings from step three on. In addition, the Commissioner may accept additional medical evidence or testimony from a medical expert, or otherwise further develop the record to clarify the full extent of Plaintiff's limitations. Remand is required for further explanation as to whether or not Plaintiff is more limited in any of the exertional functions due to her need for an assistive device. The Court concludes further proceedings will serve a useful purpose.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED April 7, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28